UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERVIN DIXON and ELSA DIXON,

        Plaintiffs,                         Case No. 12-10174

v.                                           Paul D. Borman
                                              United States District Judge

WELLS FARGO BANK, N.A.,

        Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT WELLS FARGO BANK, N.A.'S MOTION TO DISMISS (ECF NO. 3)

This matter is before the Court on Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion to Dismiss. (ECF No. 3.) Plaintiffs filed a response (ECF No. 5) and Wells Fargo filed a reply (ECF No. 6). The Court held a hearing on April 16, 2012 on the motion to dismiss and also held a follow-up settlement conference on April 30, 2012. After months of trying to resolve the matter, the parties have been unable to reach resolution. Accordingly, for the reasons that follow, the Court GRANTS Defendant's Motion to Dismiss and DISMISSES Plaintiff's Complaint with prejudice.

**INTRODUCTION**

Ervin and Elsa Dixon, husband and wife, filed this four-count Complaint challenging Defendant Wells Fargo's foreclosure and May 11, 2011 Sheriff's sale of their home. Plaintiffs claim that Wells Fargo failed to offer them a reasonable modification of the terms of their loan prior to foreclosing on their home and failed to reject Plaintiffs' most recent application for loss mitigation

options prior to the May 11, 2011 sheriff's sale.

I.      BACKGROUND

Plaintiffs Ervin and Elsa Dixon, husband and wife, purchased the home at 16604 E. State Fair Street in Detroit, Michigan, 48205 that is the subject of this litigation nearly twenty years ago.[1] On March 24, 2004, Plaintiffs received from Premier Mortgage Lending, LLC ("Premier") a $93,846.00 loan that was secured by a HUD/FHA insured mortgage ("the Mortgage") on the property. (Dkt. No. 1, Ex. 1 Mortgage; Compl. ¶¶ 7-8.) On March 29, 2004 Premier assigned the Mortgage to Wells Fargo Home Mortgage Inc., a division of Defendant Wells Fargo Bank, N.A. ("Wells Fargo"). (*Id.* Ex. 2; Compl. ¶ 9.) The Mortgage was recorded with the Wayne County Register of Deeds on April 9, 2004. (*Id.*)

In or around October, 2006, Plaintiff Ervin Dixon agreed to take early retirement from his employer, Ford Motor Company, on the understanding that he would be receiving a monthly pension of $1,997.12, with which Mr. Dixon alleges he would have been able to afford his mortgage payments. (Compl. ¶ 10.) However, after retiring, on or about May 17, 2007, Mr. Dixon was informed that his monthly pension would only be $1,053.94, an income reduction that caused Plaintiffs' household to suffer unexpected financial stress. Mr. Dixon began looking for other employment and building his own business as an electrician to try to make up for the shortfall. (*Id.* ¶¶ 11-13.)

In early 2008, Mr. Dixon, while still current on his mortgage, contacted Defendant to inform them that he was going to be unable to make his upcoming mortgage payment and seeking to modify

---

[1] The facts alleged in Plaintiffs' Complaint are taken as true for purposes of this Motion. *Ashcroft v. Iqbal*, 556 U.S. 1937, 1949 (2009).

2

his loan to avoid default. Plaintiff became delinquent on the loan and, unable to get information from Defendant, Plaintiff sought the advice of a housing counselor. Ultimately, Defendant offered Plaintiffs a "special forbearance agreement" that was unaffordable for Plaintiffs. (*Id.* 14-19.) Defendant foreclosed on Plaintiffs' home and sold the home at a Sheriff's sale on July 8, 2009. On January 28, 2010, Defendant expunged the July 8, 2009 Sheriff's deed, stating that the foreclosure sale "was inadvertently held," and correcting record title to show that Plaintiffs' original April 9, 2004 recorded mortgage was in full force and effect. (Dkt. No. 1, Ex. 3, Affidavit Expunging Sheriff's Deed; Compl. ¶¶ 20-23.)

Following the "inadvertently held" foreclosure sale, Plaintiffs continued to seek modification of their loan and on January 12, 2010, Plaintiffs received a letter from Wells Fargo denying their application for a loan modification. Further efforts at loan modification resulted in Plaintiffs' executing a Loan Modification Agreement on August 10, 2010, which resulted in a monthly payment that Plaintiff was able to pay for only two months before again falling into default on the loan. (Compl. ¶¶ 23-28; Dkt. No. 6, Def.'s Reply Ex. 7.) Plaintiffs again contacted Wells Fargo on or about December 14, 2010, seeking a further loan modification, asking Wells Fargo to reduce their monthly payment to $600 per month, an amount they felt they could afford. (*Id.* ¶¶ 29-30.)

On January 14, 2011, Wells Fargo sent Plaintiffs a letter explaining that they were not eligible for a loan modification because Wells Fargo was unable to get to a revised payment that Plaintiffs could afford. The letter explained further options Plaintiffs could consider in an effort to avoid losing their home, such as a short sale or assigning their deed to Wells Fargo in lieu of

3

foreclosure.[2] (Dkt. No. 6, Def.'s Reply, Ex. 6.) Wells Fargo's work papers in support of the January 14, 2011 denial letter indicate that all options for modification of Plaintiff's loan were evaluated, including FHA and HAMP, but that at Plaintiffs' current net income, which was not a temporary hardship, there were no affordable options for Plaintiffs. (*Id.*)

Plaintiffs continued seeking viable options to avoid foreclosure but in April, 2011, Wells Fargo began foreclosure by advertisement proceedings. Plaintiffs' home was sold at a Sheriff's Sale on May 11, 2011. (Compl. ¶¶ 33-34.) On November 11, 2011, the last day of the redemption period on their home, Plaintiffs filed the instant action, claiming that Wells Fargo failed to adequately evaluate Plaintiffs' request for loan modification prior to foreclosing on Plaintiffs' home and completing the Sheriff's Sale on May 11, 2011. (*Id.* ¶ 35.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220

---

[2] Defendant attaches the January 14, 2011 letter to Plaintiffs from Wells Fargo denying their application for mortgage assistance and offering Plaintiffs other options in lieu of foreclosure. (Def.'s Reply Ex. 6.) Plaintiffs do not attach a copy of this letter to their Complaint but refer to the denial letter in their Complaint. (Compl. ¶31.) "[D]ocuments attached to a motion to dismiss that are referred to in the Complaint and central to the claim are deemed to form part of the pleadings," and therefore may be considered on a motion to dismiss. *Snell v. Wells Fargo Bank, et al.*, No. 11-cv-12018, 2012 WL 1048576, at *2 (E.D. Mich. March 28, 2012) (citing *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999)).

4

F.3d 433, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level...." *Id.* at 555 (internal citations omitted). Dismissal is appropriate if the plaintiff has failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Id.* at 570. The Supreme Court clarified the concept of "plausibilty" in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*Id.* at 1948-50. A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 127 S.Ct. at 1965). Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 127 S.Ct. at 1969). ,

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1)

5

documents that are referenced in the plaintiff's complaint or that are central to plaintiff's claims (2) matters of which a court may take judicial notice (3) documents that are a matter of public record and (4) letters that constitute decisions of a government agency. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 2499, 2509 (2007).

### III. ANALYSIS

#### A. Failure to Redeem the Property Prior to Expiration of the Redemption Period is Fatal to Each of Plaintiffs' Claims, All of Which Relate to the Foreclosure and Sheriff's Sale

The foreclosure sale of Plaintiffs' home occurred on May 11, 2011. (Dkt. No. 3, Def.'s Mot. Ex. 3.) As explained in the Sheriff's Deed, Plaintiffs right to redeem the property under Michigan law, therefore, expired on November 11, 2011. *Id.* 6; Mich. Comp. Laws § 600.3204(8). On November 11, 2011, Plaintiffs commenced this action in Wayne County Circuit Court. Defendant timely removed the case to this Court. (Dkt. No. 1, Notice of Removal ¶ 1.) Notwithstanding the fact that Plaintiffs filed their suit on the last day of the redemption period, their failure to redeem the property before that date is fatal to their claims. When the redemption period expired on November 11, 2011, Wells Fargo became vested with all right, title and interest in the property and, absent a clear showing of fraud or irregularity in the foreclosure proceedings, Plaintiff cannot challenge Wells Fargo's full right, title and interest in the property.

Michigan courts have long held that a plaintiff is barred from challenging a foreclosure sale after the right to redemption has passed. *See Piotrowski v. State Land Office Bd.*, 302 Mich. 179, 187 (1942) (holding that "plaintiffs did not avail themselves of their right to redemption in the foreclosure proceedings and at the expiration of such right . . . all plaintiffs' rights in and title to the property were extinguished.") Several Michigan state and federal courts, discussed below, have

applied *Piotrowski* to bar claims by former property owners on their foreclosed properties after the period of redemption has passed.[3] The fact that an action challenging a foreclosure is filed before the expiration of the redemption period does not toll the running of the redemption period and does not change this result. This principle was established by the Michigan Court of Appeals in *Overton v. Mortgage Electronic Registration Systems*, No. 284950, 2009 WL 1507342 (Mich. Ct. App. May 28, 2009). Plaintiff in *Overton* filed suit against MERS and others challenging the foreclosure and sale of his property at public auction on April 18, 2007. *Id.* at *1. The redemption period expired on October 18, 2007 and plaintiff filed suit on September 21, 2007. *Id.* The Michigan Court of Appeals rejected plaintiff's argument that his filing suit tolled the redemption period:

> Plaintiff's suit did not toll the redemption period. Plaintiff is simply trying to wage a collateral attack on the foreclosure of the property. Even if his assertions were true and the cases he cites indeed supported his arguments, plaintiff was required to raise the arguments when foreclosure proceedings began. Plaintiff made no attempt to stay or otherwise challenge the foreclosure and redemption sale. Although he filed his suite before the redemption period expired, that was insufficient to toll the redemption period. 'The law in Michigan does not allow an equitable extension of

---

[3] Some courts in this District have analyzed the issue as one of standing, but others have noted persuasively that Article III standing is not in question and the issue is more appropriately addressed as one attacking the merits of the claim. *See, e.g. Tatar v. Trott & Trott, P.C.*, No. 10-12832, 2011 WL 3706510, at *7 n.3 (E.D. Mich. Aug. 3, 2011) (collecting cases and addressing the issue as a merits decision, not a standing decision, and concluding that a failure to challenge a foreclosure during the redemption period deprives the mortgagor of the right to mount a challenge after the redemption period has expired and the purchaser has been vested with all right, title and interest in the property). *See also Rainey v. U.S. Bank Nat'l Ass'n*, No. 11-12520, 2011 WL 5075700, at *2-3 (E.D. Mich. Oct. 25, 2011) (reasoning that as continued possessors of the property who claim continued right to legal ownership based on defects in the process that deprived them of that property, plaintiffs clearly have Article III standing); *Ahmad v. Wells Fargo Bank, N.A.*, No. 11-15204, 2012 WL 917863, at *3-5 (E.D. Mich. Feb. 27, 2012) (agreeing with the Judge Lawson's analysis in *Rainey* that the expiration of the redemption period does not deprive a homeowner of Article III standing to bring a quiet title claim, but finding that plaintiffs' claims were subject to dismissal on other grounds). As discussed *infra*, whether viewed as a standing challenge or a merits based challenge, Plaintiffs' claims fail in the instant case.

7

> the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice in the absence of a clear showing of fraud, or irregularity.' *Schulthies v. Barron*, 16 Mich. App. 246, 247-48; 167 NW2d 784 (1969). Once the redemption period expired, all of plaintiff's rights in and title to the property were extinguished. *Piotrowski v. State Land Office Bd.*, 302 Mich. 179, 187; 4 NW2d 514 (1942).

2009 WL 1507342, at *1.

Multiple courts in this district have followed *Overton*, which relied on the decision of the Michigan Supreme Court in *Piotrowski*, and have denied challenges to foreclosures and statutory sales by advertisement following expiration of the period of redemption, regardless of the date of filing of plaintiff's complaint. *See Snell v. Wells Fargo Bank, et al.*, No. 11-cv-12018, 2012 WL 1048576, at *3 (E.D. Mich. March 28, 2012) (citing *Overton* and holding that under Michigan law plaintiffs lost standing to assert any claim with respect to the foreclosed property after the date on which the redemption period expired, at which time defendant became vested with all right title and interest in the property, and further holding that this "outcome is not altered by Plaintiffs' filing of th[e] lawsuit . . . one day before the expiration of the redemption period"); *Dingman v. OneWest Bank, FSB*, __F. Supp. 2d__, 2012 WL 884357, at *4 (E.D. Mich. March 14, 2012) (citing *Overton* and holding that plaintiffs lacked standing because they failed to redeem the property before the redemption period expired on December 2, 2011, at which time all right, title and interest vested in OneWest, and further finding that such an outcome was not altered by the fact that plaintiffs filed their lawsuit challenging the foreclosure on November 28, 2011, before the redemption period expired); *Gendjar v. BAC Home Loans Servicing, LP*, No. 11-14557, 2012 WL 130139, at *2 (E.D. Mich. Jan. 17, 2012) (citing *Overton*, recognizing that Michigan law provides that a former owner of foreclosed property loses all right, title and interest in the property once the period of redemption

8

expires, holding that plaintiffs therefore lacked standing to assert a claim thereafter and that plaintiffs' filing of a lawsuit on the day the redemption period expired did not toll the redemption period); *Galati v. Wells Fargo Bank*, No. 11-11487, 2011 WL 5178276, at *4 (E.D. Mich. Nov. 1, 2011) (citing *Overton*, analyzing the issue as one of standing and concluding that, having made no attempt to challenge the foreclosure during the redemption period, plaintiff lacked standing to challenge the sale because all right, title and interest vested in the purchaser at the time of the sheriff's sale); *Mitan v. Federal Home Loan Mortgage Corp.*, No. 10-13286, 2011 WL 4837502, at *2 (E.D. Mich. Sept. 22, 2011) (citing *Overton* and finding that plaintiffs lacked standing to sue where the redemption period expired following foreclosure and plaintiffs failed to redeem during the redemption period even where suit is filed before the expiration of the redemption period); *Moriarty v. BNC Mortgage, Inc.*, No. 10-13860, 2010 WL 5173830, at *2 (E.D. Mich. Dec. 15, 2010) (citing *Overton* and concluding that pursuant to Michigan law, once the redemption period following foreclosure expired, the former owner's right, title and interest in the property are extinguished and former owner lacks standing to challenge the foreclosure and sale, even when suit is filed before expiration of the redemption period). Plaintiffs do not address any of these decisions in their responsive brief.

Whether analyzed as an issue of standing or as a merits-based challenge, the Court agrees with Defendant that Plaintiffs cannot challenge the foreclosure and sale to Wells Fargo in the instant case. The only possible exception to the rule that such claims are absolutely barred post-redemption applies when the mortgagor makes a strong showing of "fraud or irregularity." *Tatar v. Trott & Trott, P.C.*, No. 10-12832, 2011 WL 3706510, at *8 (E.D. Mich. Aug. 3, 2011). "'The Michigan Supreme Court has held that it would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside.'" *Sweet Air Inv. Inc. v. Kenney*, 275 Mich. App. 492, 497

(2007) (quoting *United States v. Garno*, 974 F. Supp. 628, 633 (E.D. Mich. 1997), citing *Detroit Trust Co. v. Aggozinio*, 280 Mich. 402, 405-06 (1937)); *Schulthies v. Barron*, 16 Mich. App. 246, 247-48 (1969) ("The law in Michigan does not allow an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice in the absence of a clear showing of fraud, or irregularity."). Similarly, in the cases on which Plaintiffs rely to support their contention that they are permitted, under Michigan law, to challenge foreclosure proceedings post-redemption, a finding of fraud or serious irregularity was central to the courts' decision to permit the challenge. *See, e.g.*, *Pine Oaks, LLC v. Devries*, No. 249163, 2004 WL 2827396, at *5 (Mich. Ct. App. Dec. 9, 2004) (finding "significant procedural irregularities with respect to the default, foreclosure and redemption" where home was sold for $100,000 less than its alleged value and where there were questions as to whether the foreclosure was undertaken against the proper party). Plaintiffs do not allege any such procedural irregularities in the instant case.

Nor does Plaintiffs' Complaint or their response to Defendant's motion even hint at a claim of fraud. A claim of fraud under Michigan law requires the following elements: (1) that the defendant made a misrepresentation; (2) that it was false; (3) that defendant knew at the time of making the statement that it was false or was reckless with regard to knowledge of the truth; (4) that defendant made it with the intention that plaintiff would rely on it; (5) that plaintiff did rely and act on the misrepresentation; and (6) that plaintiff suffered injury as a result. *Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich. 330 (1976). The failure to allege and establish each element independently defeats a claim of fraud. *Id.*

No such allegations can fairly be gleaned from Plaintiffs' Complaint. Plaintiffs in the instant

case do not even make bare assertions of fraudulent conduct, let alone satisfy the pleading requirements for fraud under Fed. R. Civ. P. 9(b). To satisfy the particularity requirements of Rule 9(b), a plaintiff, at minimum, must "allege the time, place, and contents of the misrepresentation(s) upon which he relied." *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir.1984). The bar for asserting a claim of fraud to set aside a foreclosure sale is extremely high. *See Snell*, 2012 WL 1048576, at *5 (finding that bare assertions that plaintiffs had been "fraudulently misled" by defendants into believing that defendant would attempt to determine whether plaintiffs qualified for a loan modification, were inadequate to toll the expiration of the redemption period). *See also Kubicki v. Mortgage Electronic Registration Systems*, 292 Mich. App. 287, 293 (2011) (holding that plaintiff "failed to show the requisite 'strong case of fraud or irregularity, or some peculiar exigency, to overturn the foreclosure sale'") (quoting *Sweet Air*, *supra*, 275 Mich. App. at 497). Plaintiffs do not allege the elements of a claim of fraud and certainly do not identify any alleged fraud with sufficient particularity to support their attempt to set aside the foreclosure sale.

There is no question that all right, title and interest in Plaintiffs' property vested in Wells Fargo on November 11, 2011, the last day to redeem the property. Plaintiffs' attempt to dress their untimely foreclosure challenge as a quiet title claim must fail. *See, e.g.*, *Snell*, 2012 WL 1048576, at *2 ("Plaintiffs' claim [to quiet title] fails as a matter of law because, once the redemption period following the foreclosure of the property expired, their rights in, and title to, the property were extinguished and they lost all standing to bring claims with respect to the property.")

It is clear under Michigan law that on November 11, 2011, all right, title and interest in the property vested in Wells Fargo. The only possible argument available to Plaintiffs to challenge Wells Fargo's title to the property is a clear showing of fraud or procedural irregularity in the foreclosure

11

process. *Piotrwoski, Overton, Schulthies, supra.* Plaintiffs have failed to make such a showing and cannot mount an untimely challenge to the foreclosure proceedings or the sale of the property, regardless of how they characterize their claim. *See, e.g., Dingman,* 2012 WL 884357, at *4-5 (rejecting plaintiffs' suggestion that defendants failure to engage in appropriate loan modification steps was sufficient indicia of "irregularity" to toll the redemption period or void the foreclosure sale).

### B. There is No Private Right of Action to Enforce the HUD Regulations Governing Foreclosure of Federally Insured Mortgages (Count I)

Even if all challenges to the foreclosure and sale were not otherwise barred in this case, Plaintiffs' claims that Defendant failed to meet its loan modification obligations under certain regulations of the Department of Housing and Urban Development ("HUD") must be dismissed. In Count I of their Complaint, Plaintiffs allege that Wells Fargo has failed to comply with "federal law governing foreclosures." (Compl. ¶ 9.) Specifically, Plaintiffs rely on HUD regulations that create requirements applicable to the servicing practices of lending institutions who service mortgages insured by HUD. It appears well accepted, and Plaintiff can not really dispute, that no private right of action exists under the HUD regulations. *See Federal National Mortgage Ass'n v. LeCrone,* 868 F.2d 190, 193 (6th Cir. 1989) ("no express or implied right of action in favor of the mortgagor exists for violation of HUD mortgage servicing policies"). *See also Meyer v. Citimortgage, Inc.,* No. 11-13432, 2012 WL 511995, at *3 (E.D. Mich. Feb. 16, 2012) ("It is well established that the National Housing Act and attending regulations do not expressly or implicitly create a private right of action to mortgagors for a mortgagee's noncompliance with the Act or regulations"); *Mitchell v. Chase Home Finance LLC,* No. 06-2099, 2008 WL 623395, at *3 (N.D. Tex. March 4, 2008) (noting that "the regulations promulgated under the National Housing Act govern relations between the mortgagee

and the government, and give the mortgagor no claim for duty owed or for the mortgagee's failure to follow said regulations") (citing *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 360-61 (5th Cir.1977)).

### C. Plaintiffs Cannot Base Their Breach of Contract Claim on Defendant's Pre-Existing Duty to Comply with HUD Regulations

Plaintiffs argue, however, that they are not asserting a right of action under the HUD regulations but rather are seeking to enforce the terms of their contract with Wells Fargo, which Plaintiffs argue incorporates the HUD mortgage servicing regulations. Plaintiffs claim that their federally insured mortgage incorporates these HUD regulations as part of the contract between the parties through paragraph 9(d) of the mortgage agreement, which provides:

> (d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclosure if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

Compl. Ex. 1, 36.

Plaintiffs rely on *Mullins v. GMAC Mortgage, LLC*, No. 09-cv-00704, 2011 WL 1298777 (S.D. W. Va. March 31, 2011), in which the court distinguished between an action by a private party to enforce the HUD regulations and an action for breach of a contract that incorporated those regulations as part of the parties' agreement:

> Further, defendants' argument that plaintiffs lack standing to bring a cause of action for the failure of GMAC to comply with HUD regulations also misses the mark. Quite simply, plaintiffs are suing under a straightforward state law contract theory, alleging that defendants did not uphold their end of the contractual bargain. Plaintiffs are not, as defendants would have the court believe, suing to enforce HUD regulations under some vague and likely non-existent cause of action allowing a member of the public to take upon himself the role of regulatory enforcer. These two theories of recovery are distinct and unrelated, as Judge Williams thoughtfully concludes in *Kersey v. PHH*

*Mortgage Corp.*, 682 F. Supp. 2d 588, 596–97 (E.D. Va. 2010).

2011 WL 1298777, at *3.

The reasoning of *Mullins* appears to support Plaintiffs' independent breach of contract claim. Defendant does not attempt to distinguish *Mullins*, but responds that no Michigan Court has adopted *Mullins* and also relies on a decision of the District Court for the Northern District of Texas which dismisses a similar contract claim on the basis that it is merely a restatement of claims for violations of the HUD regulations, an action that concededly does not exist. *Mitchell v. Chase Home Finance LLC*, No. 06-2099, 2008 WL 623395, at *4 (N.D. Tex. March 4, 2008) (stating, without discussion, that the breach of contract claim only restated the HUD claim and therefore must be dismissed). Other courts, however, have agreed with the reasoning of the district court in *Mullins* and concluded that a "'mortgagee's failure to comply with the [HUD] regulations made part of the parties' agreement could give rise to liability on a contract theory because the parties incorporated the terms into their contract.'" *Sinclair v. Donovan*, No. 11-cv-00010, 11-cv-00079, 2011 WL 5326093, at *7 (S.D. Ohio Nov. 4, 2011) (quoting *Kersey v. PHH Mortgage Corp.*, 682 F. Supp. 2d 592, 596 (E.D. Va. 2010)).

Plaintiffs have failed to cite any case from a Michigan court or this district which has adopted the *Mullins* approach. This Court is not inclined to permit Plaintiffs to merely restate or redress their claim based on a violation of HUD regulations, which otherwise is clearly foreclosed, as a breach of contract claim based on paragraph 9(d) of the mortgage agreement. Additionally, Defendant makes an alternative, and persuasive, argument for dismissal of Plaintiffs' breach of contract claim that Plaintiffs do not address or rebut, and which finds some support in other decisions in this district. Wells Fargo argues that because it was under an independent statutory duty to comply with the HUD regulations, Plaintiffs cannot invoke the breach of that duty as a basis for a private contract claim.

14

In *Houston v. U.S. Bank Home Mortgage Wisconsin Servicing*, No. 10-13780, 2011 WL 4905533 (E.D. Mich. Oct. 14, 2011), Judge Duggan granted summary judgment on plaintiff's breach of contract claim, which was premised on the allegation that defendant failed to comply with Federal Housing Authority regulations that required the defendant to engage in loss mitigation. The mortgage agreement in *Houston* contained language identical to paragraph 9(d) of the instant Mortgage Agreement, which states that the agreement does not authorize acceleration or foreclosure that is not permitted by the regulations of the Secretary of HUD. (Def.'s Mot. Ex. 1 ¶ 9.) Holding that Michigan's pre-existing duty rule precluded plaintiff from asserting a breach of contract claim based on defendant's failure to comply with its pre-existing statutory duty, the court explained:

> The Michigan courts have held that, under the preexisting duty rule, a breach of contract claim cannot be premised on an obligation that the defendant already had a duty under the law to perform. *See Lufthansa Cargo A.G. v. Cnty. of Wayne*, No. 01–74579, 2002 WL 31008373, at *4 (E.D. Mich. Aug.16, 2002) (unpublished) (citing *Gen'l Aviation, Inc. v. Capital Region Airport Auth.*, 224 Mich. App. 710, 714–15, 569 N.W.2d 883 (1997)), *aff'd* 142 F. App'x 265 (6th Cir. 2004); *see also Romero v. Buhimschi*, 396 F. App'x 224, 233–34 (6th Cir. 2010). Plaintiff fails to respond to this argument and this Court concludes that the rule precludes Plaintiff from asserting a breach of contract claim based on MSHDA's failure to comply with a preexisting statutory duty.

2011 WL 4905533, at *8. Similarly in the instant case, Plaintiffs have offered no response to this argument and the Court agrees that the reasoning of the Michigan courts appears to preclude such a claim.

In any event, if the Court concluded that a breach of contract claim could be asserted based on ¶9(d) of the Mortgage Agreement, Michigan law would preclude such a challenge to Plaintiffs' post-redemption foreclosure-related challenge in the instant case. *See supra* discussion at section IIIA. Plaintiffs in the instant case waited until the last day of the redemption period to assert their

15

challenges to the foreclosure process. Having made no effort to raise these claims in a timely fashion to forestall foreclosure proceedings or prevent a sale before expiration of the sixth month redemption period, Plaintiffs are precluded under Michigan law from mounting that challenge now in the absence of a clear showing of irregularity or fraud. "[B]ecause the entire complaint raises claims related to the foreclosure proceedings, it is subject to dismissal on this ground." *Galati*, 2011 WL 5178276, at *4.

### D. Plaintiffs' Negligence and Estoppel Claims Fail (Counts III and IV)

Plaintiffs' negligence claim is based upon their assertion that Wells Fargo owed them a duty under the Home Affordable Modification Program, 12 U.S.C. § 5201, *et seq.* ("HAMP") "to protect Plaintiff[s] from an unnecessary foreclosure." (Dkt. No. 5, Pls.' Resp. 17.) "Under HAMP, individual loan servicers voluntarily enter into contracts with Fannie Mae, acting as the financial agent of the United States, to perform loan modification services in exchange for certain financial incentives." *Nafso v. Wells Fargo Bank NA*, No. 11-10478, 2011 WL 1575372, at *3 (E.D. Mich. April 26, 2011) (quoting *Villa v. Wells Fargo Bank, N.A.*, No. 10CV81, 2010 WL 935680, at *1 (S.D. Cal. Mar. 15, 2010)). It has been clearly established that borrowers do not have a private right of action under HAMP and are not intended beneficiaries under HAMP contracts. *Id.* at *4. "[A]s recognized by [] this and other federal courts, there is no private right of action under HAMP." *Duff v. Federal Nat'l Mtg. Ass'n*, No. 11-12474, 2012 WL 692120, at *4 (E.D. Mich. Feb. 29, 2012). *See also Meyer*, 2012 WL 511995, at *9 (finding that no duty exists under HAMP to modify a loan and even if such a duty did exist, HAMP does not create a private right of action under which plaintiff may seek relief). It is equally well established that Plaintiffs cannot claim to be third party beneficiaries of the HAMP agreements. *See, e.g. Nafso.*, 2011 WL 1575372, at *5; *Duff v. Federal*

16

*Nat'l Mtg. Ass'n*, No. 11-12474, 2012 WL 692120, at *5 (E.D. Mich. Feb. 29, 2012) (recognizing that "the overwhelming majority of courts have held that borrowers are not third-party beneficiaries to the servicing contracts between entered into between loan servicers and Fannie Mae"); *Ahmad v. Wells Fargo Bank, N.A.*, __F. Supp.2d__, 2012 WL 917769, at *7 (E.D. Mich. 2012) (rejecting a similar negligence claim and noting that "'[f]ar from establishing a new duty of care that would cast a wider net of liability under state-law negligence claims, the [HAMP] statute removes a legal barrier to more widespread loan modification activity so as to encourage servicers to participate in HAMP and related programs.'") (quoting *Markle v. HSBC Mortgage Corp.*, __F. Supp. 2d__, 2011 WL 6944911, at *8 (D. Mass. 2011)).

Plaintiffs suggest that the alleged duty to protect Plaintiffs from unnecessary foreclosure also arises from the Mortgage Agreement itself. (Dkt. No. 5, Pls.' Resp. 18.) However, even if the Mortgage Agreement suggested such a duty, such a claim is precluded under Michigan law. "As a general rule, a tort claim under Michigan law cannot rest upon the breach of a contractual obligation." *Golden v. Washington Mutual, Inc.*, No. 04-73857, 2005 WL 3416464, at *3 (E.D. Mich. Dec. 13, 2005) (holding that any obligations that defendant failed to fulfill under the parties' mortgage agreement could not sustain a claim of negligence). *See also Ahmad*, 2012 WL 917769 at *8-9 (finding no duty separate and apart from the mortgage agreement to comply with HAMP guidelines); *Galati*, 2011 WL 5178276, at *8 (rejecting plaintiff's negligence claim for failure to allege a duty a distinct from the mortgage agreement and finding no general duty of care on the part of a lending institution with respect to determining eligibility for a loan modification); *Meyer*, 2012 WL 511995, at *9 (finding no duty owed to plaintiff by defendant outside the mortgage agreement and dismissing plaintiff's tort claims where the mortgage agreement governed the parties' relationship).

Similarly here, other than their reliance on the HAMP contracts, of which Plaintiffs' are not intended beneficiaries, Plaintiffs have failed to suggest any duty that Wells Fargo may have owed them other than those arising from the Mortgage Agreement. Accordingly, their negligence claim must be dismissed. In any event, as with their breach of contract claim, Plaintiffs' negligence claim, which raises a claim related to the foreclosure proceedings, is subject to dismissal for Plaintiffs' failure to timely act during the redemption period. *See supra* discussion at section IIIA.

Finally, Plaintiffs' estoppel claim, which relies on its allegation in Counts I, II and III, each of which fails as a matter law, also fails. *Duff*, 2012 WL 692120, at *5 (holding that "plaintiff's claims of statutory violations, negligence, and breach of contract are without merit, therefore he cannot rely on those bases to support his theory of estoppel"); *Ahmad*, 2012 WL 917863, at *7 (finding that plaintiffs' tort and contract claims challenging foreclosure, which failed as a matter of law, could not serve as the predicate for an equitable estoppel claim).

## IV. CONCLUSION

There are no allegations of fraud or procedural irregularity in the instant to case that would justify setting aside the sale of the property to Wells Fargo. Indeed, Wells Fargo worked with Plaintiffs to attempt to reach a loan payment that Plaintiffs could afford.[4] It is unfortunate that Mr.

---

[4] Although Plaintiffs assert in their Complaint that there were communications and promises following this January 14, 2011, they fail to provide any writing to substantiate any subsequent alleged promises. Plaintiffs' claim that Defendant failed to evaluate Plaintiffs for a subsequent loan modification, even if actionable, is unsupported by the requisite writing to satisfy the Michigan statute of frauds, Mich. Comp. Laws § 566.132. *See Snell, supra* 2012 WL 1048576, at *6 (finding that under Michigan statute of frauds, a party is precluded from bringing any claim against a financial institution to enforce the terms of an oral promise and rejecting plaintiff's attempt to rely on alleged promises by its lender to enter into a loan modification agreement or to forbear from foreclosure); *Meyer*, 2012 WL 511995, at *9 (dismissing plaintiffs' fraud claims based on plaintiffs' failure to provide documentary evidence establishing a promise of financial accommodation).

Dixon's pension was not what he expected it would be and that he and his wife were forced by their personal financial situation to seek more affordable housing. It is clear, however, that under Michigan law, Plaintiffs' failure to redeem their property prior to November 11, 2011, or to allege sufficiently serious fraud or procedural irregularity, precludes the instant challenge to the foreclosure process or Sheriff's sale.

Additionally, even were Plaintiffs' claim not otherwise foreclosed, the Court finds that Plaintiffs could not mount a successful breach of contract or negligence claim against Wells Fargo where Wells Fargo was under a pre-existing duty to comply with the HUD-FHA regulations and Plaintiffs are not intended third-party beneficiaries of any HAMP contract between Wells Fargo and Fannie May.

For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss (ECF No. 3) and DISMISSES Plaintiffs' Complaint with prejudice.

_____
Paul D. Borman
United States District Judge

Dated: 9-25-12